**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————
|   :
THE PHOENIX COMPANIES, INC., now   :
known as THE NASSAU COMPANIES   :    20 Civ. 1738 (KPF)
OF NEW YORK,   :
|   :
     Plaintiff,   :
|   :
v.   :
|   :
CONCENTRIX INSURANCE   :
ADMINISTRATION SOLUTIONS   :
CORPORATION,   :
|   :
     Defendant.   :
————————————————————————:
————————————————————————
|   :
CONCENTRIX INSURANCE   :
ADMINISTRATION SOLUTIONS   :
CORPORATION,   :
|   :
     Counterclaim Plaintiff,   :
|   :
v.   :
|   :
THE PHOENIX COMPANIES, INC., now   :
known as THE NASSAU COMPANIES OF :
NEW YORK,   :
PRICEWATERHOUSECOOPERS   :
ADVISORY SERVICES LLC, and ROES   :
1 through 10,   :
|   :
     Counterclaim Defendants.   :
————————————————————————:

**MEMORANDUM OF LAW IN SUPPORT OF PWC's MOTION TO DISMISS**
**CONCENTRIX'S FIRST AMENDED COUNTERCLAIM**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF RELEVANT FACTS ......................................................................... 3

LEGAL STANDARD FOR MOTION TO DISMISS .................................................... 4

ARGUMENT .................................................................................................................... 5

I.    Concentrix's Negligent Misrepresentation Claim Is Deficient ............................... 5

      A.    Choice of Law ............................................................................................... 5

      B.    Legal Standard .............................................................................................. 6

      C.    Concentrix Did Not Plead Any Misrepresentations "With Particularity" .............. 7

      D.    Concentrix Failed to Plead PwC's Culpable State of Mind ................................. 9

      E.    Concentrix Cannot Establish Justifiable Reliance on Any Statements PwC
            Made During Due Diligence ......................................................................... 11

            1.    Concentrix Knowingly Entered the MSA Aware of the Risks
                  Regarding Phoenix's Products .............................................................. 11

            2.    Concentrix Expressly Disclaimed Representations Related to Due
                  Diligence ............................................................................................. 14

      F.    PwC Does Not Owe Concentrix a Cognizable Duty ............................................ 16

II.   Concentrix's Negligence Claim is Duplicative and Not Properly Pled .............................. 18

III.  Concentrix's Claims are Time-Barred ..................................................................... 19

IV.   Concentrix Improperly Joined PwC in This Action ............................................... 22

      A.    PwC Is Not a Necessary and Indispensable Party For Mandatory Joinder .......... 22

      B.    Permissive Joinder is Not Appropriate Because Concentrix's Claims
            Against PwC and Phoenix Lack Common Questions of Law or Fact ................. 23

V.    The Court Should Dismiss Concentrix's Claims With Prejudice ......................................... 25

CONCLUSION ................................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
  404 F.3d 566 (2d Cir. 2005)...........................................................................6, 18

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*,
  39 F. Supp. 3d 516 (S.D.N.Y. 2014).......................................................................7

*AMA Management Corp. v. Strasburger*,
  420 S.E.2d 868 (S.C. Ct. App. 1992)...............................................................13, 16

*Anschutz Corp. v. Merrill Lynch & Co.*,
  690 F.3d 98 (2d Cir. 2012)......................................................................6, 11, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................4, 5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)..........................................................................6, 7

*B&M Linen Corp. v. Kannegiesser, USA, Corp.*,
  679 F. Supp. 2d 474 (S.D.N.Y. 2010)......................................................................9

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
  949 F. Supp. 2d 486 (S.D.N.Y. 2013).................................................................6, 17

*Cantor Fitzgerald Inc. v. Lutnick*,
  313 F.3d 704 (2d. Cir. 2002).........................................................................20

*Century Pac., Inc. v. Hilton Hotels Corp.*,
  528 F. Supp. 2d 206 (S.D.N.Y. 2007)................................................................12, 13

*Century Pac., Inc. v. Hilton Hotels Corp.*,
  354 F. App'x 496 (2d Cir. 2009) .....................................................................12, 13

*Chakrabarti v. City of Orangeburg*,
  743 S.E.2d 109 (S.C. 2013) ..........................................................................18

*Cheney Bros., Inc. v. Batesville Casket Co.*,
  47 F.3d 111 (4th Cir. 1995) ..........................................................................11

*Citizens & S. Secs. Corp. v. Braten*,
    733 F. Supp. 655 (S.D.N.Y. 1990) .......................................................6

*Compania Sud-Americana de Vapores v. IBJ Schroder Bank & Tr. Co.*,
    785 F. Supp. 411 (S.D.N.Y. 1992) .....................................................14

*Corchado v. Product Design & Dev., Inc.*,
    2000 WL 134689 (S.D.N.Y. Feb. 4, 2000).........................................23

*Curran, Cooney, Penney, Inc. v. Young & Koomans, Inc.*,
    583 N.Y.S.2d 478 (2d Dep't 1992).....................................................14

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
    352 F.3d 775 (2d Cir. 2003)................................................................17

*Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
    343 F.3d 189 (2d Cir. 2003)........................................................11, 15

*Fagan v. AmerisourceBergen, Corp.*,
    356 F. Supp. 2d 198 (E.D.N.Y. 2004) .................................................7

*Fed. Ins. Co. v. Am. Home Assur. Co.*,
    639 F.3d 557 (2d Cir. 2011).................................................................5

*German v. Fed. Home Loan Mortg. Corp.*,
    1998 WL 812478 (S.D.N.Y. Nov. 16, 1998)................................23, 24

*Ghartey v. St. John's Queens Hosp.*,
    869 F.2d 160 (2d Cir. 1989)...............................................................20

*Glendora v. Malone*,
    917 F. Supp. 224 (S.D.N.Y. 1996) ....................................................23

*Grey v. Gruntal & Co., Inc.*,
    1984 WL 1344 (S.D.N.Y. Dec. 14, 1984) ...........................................8

*Harrington v. Mikell*,
    469 S.E.2d 627 (S.C. Ct. App. 1996)..................................................17

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996)........................................................9, 14, 15

*Henneberry v. Sumitomo Corp. of Am.*,
    532 F. Supp. 2d 523 (S.D.N.Y. 2007).........................................7, 9, 10

*Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*,
   227 F.3d 8 (2d Cir. 2000)...............................................................................................9

*In re Coudert Bros. LLP*,
   673 F.3d 180 (2d Cir. 2012).........................................................................................20

*In re Lehman Bros. Secs. & ERISA Litig.*,
   2013 WL 3989066 (S.D.N.Y. July 31, 2013) .............................................................16

*In re Sharp Int'l Corp.*,
   281 B.R. 506 (Bankr. E.D.N.Y. 2002)........................................................................11

*J.P. Morgan Secs. Inc. v. Ader*,
   9 N.Y.S.3d 181 (1st Dep't 2015) ................................................................................16

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001).........................................................................................10

*Keeney v. Kemper Nat'l Ins. Cos.*,
   133 F.3d 907 (2d Cir. 1998).........................................................................................25

*Koontz v. Thomas*,
   511 S.E.2d 407 (S.C. 1999) ..........................................................................................9

*Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*,
   257 F. Supp. 3d 348 (S.D.N.Y. 2017)...................................................................18, 19

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
   821 F. Supp. 2d 616 (S.D.N.Y. 2011).........................................................................17

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
   108 F.3d 1531 (2d Cir. 1997)...................................................................................5, 12

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   672 F.3d 155 (2d Cir. 2012)..........................................................................................5

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007)..........................................................................................4

*McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*,
   644 S.E.2d 43 (S.C. 2007) ...........................................................................................16

*Mfrs. Hanover Tr. Co. v. Yanakas*,
   7 F.3d 310 (2d Cir. 1993).............................................................................................15

iv

*Midland Mortg. Corp. v. Wells Fargo Bank, N.A.*,
    926 F. Supp. 2d 780 (D.S.C. 2013).........................................................................19

*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
    261 F.R.D. 13 (S.D.N.Y. 2009) (LAP).................................................................16

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)..............................................................................10

*Novita LLC v. 307 W. Restaurant Corp.*,
    35 A.D.3d 234 (1st Dep't 2006) .........................................................................21

*Olagues v. Perceptive Advisors LLC*,
    902 F.3d 121 (2d Cir. 2018).................................................................................3

*Osborn v. Univ. Med. Assocs. of Med. Univ. of S. Carolina*,
    278 F. Supp. 2d 720 (D.S.C. 2003).......................................................................6

*Paladini v. Capossela, Cohen, LLC*,
    2012 WL 3834655 (S.D.N.Y. Aug. 15, 2012) (LAP), *aff'd*, 515 F. App'x 63
    (2d Cir. 2013)....................................................................................................19

*Pasternack v. Lab. Corp. of Am. Hldgs.*,
    27 N.Y.3d 817 (2016) ................................................................................18, 19

*Petroholding Dominicana, Ltd. v. Gordon*,
    2019 WL 2343658 (S.D.N.Y. June 3, 2019) (KPF) ...........................................20

*Prime Mover Cap. Partners, L.P. v. Elixir Gaming Tech., Inc.*,
    793 F. Supp. 2d 651 (S.D.N.Y. 2011) (LAK)....................................................16

*Quail Hill, LLC v. City of Richland*,
    692 S.E.2d 499 (S.C. 2010) ...............................................................................18

*Robinson v. Deutsche Bank Tr. Co. Ams.*,
    572 F. Supp. 2d 319 (S.D.N.Y. 2008).................................................................14

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2003)..................................................................................9

*San Leandro Emerg. Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996).................................................................................25

*Sung Cho v. City of New York*,
   910 F.3d 639 (2d Cir. 2018) ..................................................................................12

*Taberna Preferred Funding II, Ltd. v. Advance Realty Group LLC*,
   2014 WL 4974959 (Sup. Ct. N.Y. Cty. Oct. 3, 2014) ............................................6

*Tears v. Boston Sci. Corp.*,
   344 F. Supp. 3d 500 (S.D.N.Y. 2018) .....................................................................7

*Trodale Holdings LLC v. Bristol Healthcare Investors L.P.*,
   2018 WL 2980325 (S.D.N.Y. June 14, 2018) (KPF) ............................................11

*U.S. Capital Partners, LLC v. Stanwich Capital Advisors, LLC*,
   2015 WL 4388421 (S.D.N.Y. July 17, 2015) (KPF) ..............................................8

*U.S. Fire Ins. Co. v. N. Shore Risk Mgmt.*,
   114 A.D.3d 408 (1st Dep't 2014) ...........................................................................21

*Vincent v. Money Store*,
   915 F. Supp. 2d 553 (S.D.N.Y. 2013) ...................................................................20

*Weinreich v. Toyota Motor Sales, U.S.A., Inc.*,
   2019 WL 5684376 (D.S.C. Oct. 31, 2019) ............................................................21

*Wexner v. First Manhattan Co.*,
   902 F.2d 169 (2d Cir. 1990) ................................................................................1, 9

*Zuckerman v. Metro. Museum of Art*,
   307 F. Supp. 3d 304 (S.D.N.Y. 2018) .....................................................................5

**Statutes**

S.C. Code Ann. § 15-3-530 ..........................................................................................20

**Rules**

CPLR § 202 ....................................................................................................................20

CPLR § 214 ....................................................................................................................20

Fed R. Civ. P. 8 ...............................................................................................................4

Fed. R. Civ. P. 9 ...............................................................................................5, 6, 7, 8

Fed. R. Civ. P. 12 ............................................................................................................4

Fed. R. Civ. P. 19................................................................................................................22, 23

Fed. R. Civ. P. 20......................................................................................................................23

Fed. R. Civ. P. 21......................................................................................................................23

**Other Authorities**

7 Charles Alan Wright et al., Federal Practice and Procedure § 1652 (3d ed. 2020)....................23

PricewaterhouseCoopers Advisory Services, LLC ("PwC") respectfully submits this memorandum of law in support of its motion to dismiss defendant Concentrix Insurance Administration Solutions Corporation's ("Concentrix") First Amended Counterclaim (the "FAC") (Dkt. No. 56).

## PRELIMINARY STATEMENT

Faced with The Phoenix Companies, Inc.'s ("Phoenix") charge that Concentrix breached the December 23, 2016 Master Services Agreement (the "MSA") between them, Concentrix shirks responsibility for its own due diligence failures by pointing the finger at PwC for duping Concentrix into signing the MSA.  Specifically, Concentrix alleges that unidentified PwC "representatives" lied about Phoenix's products during a nine-week due diligence process that induced Concentrix to enter into the MSA more than *four months after* due diligence ended.

The FAC is Concentrix's second bite at the apple.  After PwC filed its motion to dismiss, Concentrix recognized that its original counterclaim failed to state cognizable claims for fraudulent misrepresentation, fraudulent inducement, and equitable indemnity, and abandoned those claims entirely.  Concentrix now asserts that PwC's liability arises out of common-law negligence and negligent misrepresentation.  But Concentrix's FAC, like its original counterclaim, falls woefully short of the pleading standards necessary to sustain viable claims against PwC.  This Court should dismiss both of Concentrix's claims against PwC for multiple, independent reasons.

*First*, Concentrix fails to state a claim for negligent misrepresentation.  Not once in the FAC's 227 paragraphs did Concentrix identify the speaker, recipient, medium, date, time, or location of PwC's alleged misrepresentations—each of which the Federal Rules of Civil Procedure and Second Circuit precedent require a plaintiff to plead with specificity. Remarkably, Concentrix admits that it has no idea who made the generalized statements it

alleges, or to whom at Concentrix they were made, calling into question Concentrix's basis for joining PwC in this action.

*Second*, Concentrix fails to allege that PwC knew or should have known of the falsity of any representations PwC made to Concentrix during due diligence.  Nor does Concentrix allege that PwC had a motive to deceive Concentrix.

*Third*, Concentrix could not—and did not—justifiably rely on PwC's alleged misrepresentations.  Under controlling precedent, a sophisticated party to a multimillion dollar commercial transaction cannot rely on extra-contractual representations.  Further, Concentrix expressly disclaimed reliance on the content of the due diligence process and other entities' roles in that process in the MSA.

*Fourth*, Concentrix cannot, as a matter of law, prove that PwC owed Concentrix a cognizable duty, a required element to sustain Concentrix's negligent misrepresentation and negligence claims.

*Fifth*, Concentrix's negligence claim fails because it is entirely duplicative of its negligent misrepresentation claim, both of which allege that PwC breached a duty to Concentrix to provide accurate information regarding Phoenix's products during due diligence.

*Sixth*, Concentrix's claims are time-barred.  Under New York's borrowing statute, a three-year statute of limitations applies to Concentrix's claims.  Concentrix contends that PwC is responsible for deficiencies in a due diligence process that concluded by August 17, 2016.  Since Concentrix filed its original counterclaim on April 17, 2020—eight months after the limitations period ended—Concentrix's claims are time-barred.

*Finally*, Concentrix improperly seeks to join PwC in this action.  PwC is neither necessary nor indispensable to this litigation, and Concentrix's claims against PwC do not share

common questions of law or fact with Concentrix's claims against Phoenix.  Litigation of Concentrix's peripheral claims against PwC alongside Phoenix's breach-of-contract claim against Concentrix and Concentrix's retaliatory claims against Phoenix will cause undue delay for the Court and the existing parties in this case.

Given the FAC's myriad deficiencies and the futility of curing those issues through re-pleading, PwC respectfully requests that the Court dismiss the FAC with prejudice.

## STATEMENT OF RELEVANT FACTS[1]

According to the FAC, Phoenix engaged PwC to administer a vendor-selection process to retain a third-party administrator for certain of Phoenix's life insurance policies and annuity contracts.  FAC ¶ 8.  During the nine-week due diligence period ending on August 17, 2016, Concentrix received more than 50,000 pages of documents describing Phoenix's products.  FAC ¶ 16.  Included among those documents was an "outline structure qualified as representative of Phoenix's products," that Concentrix concedes did not come with a "warranty . . . that it was 100% accurate or complete."  FAC ¶ 17.  Concentrix claims that the due diligence process "did not allow sufficient time for review of documents."  FAC ¶ 25.  Nor was Concentrix "allowed to implement and run some transactions to demonstrate how Concentrix's system could work" with Phoenix's products.  *Id.*

Following due diligence, on August 18, 2016, Concentrix alleges that top Phoenix executives informed Concentrix that "Phoenix did not know what their own policies involved and they needed the vendor who won the contract to get the details required, that Phoenix did not

---

[1] PwC accepts the FAC's factual recitations as true solely for purposes of this Motion to Dismiss.  *See Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 123 (2d Cir. 2018).  PwC categorically disputes Concentrix's allegations.

know and could not provide, and to be flexible and deal with surprises accordingly."  FAC ¶ 33.
Concentrix entered into the detailed MSA with Phoenix on December 23, 2016.[2]  FAC ¶ 37.

Phoenix sued Concentrix for breach of the MSA in February 2020.  *See* Dkt. No. 1.  In
response, Concentrix filed its initial counterclaim against Phoenix and third parties PwC and ten
unnamed individuals on April 17, 2020 alleging, as to PwC, claims for fraud, negligent
misrepresentation, and equitable indemnity.  *See* Dkt. No. 11.  After Phoenix and PwC filed
motions to dismiss Concentrix's counterclaims, Concentrix filed the FAC alleging claims for
negligent misrepresentation (Count VI) and negligence (Count VII) against PwC.

### LEGAL STANDARD FOR MOTION TO DISMISS

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and
plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556
U.S. 662, 677-78 (2009).  "A pleading that offers 'labels and conclusions' or 'formulaic
recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it
tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Where a complaint's allegations are "merely consistent with" a defendant's liability, or
raise a "sheer possibility" that a defendant has acted unlawfully, it fails to state a claim and is
subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).  *Id.* at 678 (quotations
omitted).  Rather, a complaint's well-pleaded, non-conclusory factual allegations must "state a
claim to relief that is plausible on its face" by creating a "reasonable inference that the defendant

---

[2] A sealed copy of the MSA is available as Exhibit 3 to the Declaration of Bryan F. Lewis, dated September 11, 2020, Dkt. No. 63.  On a Rule 12(b)(6) motion, courts may review "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  Because Concentrix quoted extensively from the MSA in its FAC, s*ee, e.g.*, FAC ¶¶ 38-48, the Court may consider the MSA on this motion.

is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

# ARGUMENT

## I.     Concentrix's Negligent Misrepresentation Claim Is Deficient

Concentrix failed to plead an actionable negligent misrepresentation claim.  In particular, Concentrix does not:  (i) satisfy Rule 9(b)'s heightened pleading standard by identifying a misstatement of material fact about Phoenix's products, who at PwC made such alleged misstatement, and who at Concentrix received such alleged misstatement; (ii) allege that PwC knew or should have known the alleged falsity of its statements; (iii) explain how its admitted knowledge of the due diligence limitations justified its reliance on statements made during the due diligence process; (iv) acknowledge that it expressly disclaimed reliance on the due diligence process in the MSA; or (v) allege that PwC owed Concentrix a cognizable legal duty.

### A.     Choice of Law[3]

Under New York's choice-of-law rules, the Court must first identify whether a conflict exists between the laws of the competing jurisdictions.  *See, e.g.*, *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 566 (2d Cir. 2011).  If no conflict exists, and if New York is one of the competing jurisdictions, a court may apply New York law.  *See, e.g.*, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012).  "[W]here an actual conflict exists, New York courts give controlling effect to the law of the jurisdiction having the greatest concern with the specific issue raised."  *Zuckerman v. Metro. Museum of Art*, 307 F. Supp. 3d 304, 316 (S.D.N.Y. 2018) (internal quotation omitted).  Because the standards for Concentrix's

---

[3] Although the MSA contains a New York choice-of-law provision for claims under the MSA, PwC was not a party to the MSA and that choice-of-law provision does not apply to Concentrix's tort claims.  *See, e.g.*, *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1531 (2d Cir. 1997) ("[U]nder New York law, a contractual choice of law provision governs only a cause of action sounding in contract, not one sounding in tort.").

negligence and negligent misrepresentation claims are the same in both jurisdictions, the court

need not resolve the choice-of-law question and may apply New York law.  *See, e.g.*, *Citizens &*

*S. Secs. Corp. v. Braten*, 733 F. Supp. 655 (S.D.N.Y. 1990).[4]

### B.     Legal Standard

To support its negligent misrepresentation claim, Concentrix must allege that:  (i) PwC

had a duty, as a result of a special relationship, to give Concentrix correct information; (ii) PwC

made a false representation that it knew or should have known was incorrect; (iii) PwC knew

Concentrix desired the information supplied in the representation for a serious purpose; (iv)

Concentrix intended to rely and act upon the information; and (v) Concentrix reasonably relied

on the information to its detriment.  *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114

(2d Cir. 2012); *Osborn v. Univ. Med. Assocs. of Med. Univ. of S. Carolina*, 278 F. Supp. 2d 720,

735 (D.S.C. 2003).

Concentrix must support its negligent misrepresentation allegations "with particularity"

under Rule 9(b) of the Federal Rules of Civil Procedure.  *See, e.g.*, *Aetna Cas. & Sur. Co. v.*

*Aniero Concrete Co., Inc.*, 404 F.3d 566, 568, 583 (2d Cir. 2005) (holding that negligent

misrepresentation claim "must be pled in accordance with the specificity criteria of Rule 9(b)");

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 508-09 (S.D.N.Y. 2013)

(collecting cases).  To satisfy Rule 9(b), Concentrix must (i) specify the statements that it

contends were false; (ii) identify the speaker; (iii) state where and when the statements were

made; and (iv) explain why the statements were false.  *See ATSI Commc'ns, Inc. v. Shaar Fund,*

---

[4] Under New York's choice-of-law rules, South Carolina law would govern Concentrix's claims because its alleged injury occurred in South Carolina, where it is incorporated and has its principal place of business.  *See, e.g.*, *Taberna Preferred Funding II, Ltd. v. Advance Realty Group LLC*, 2014 WL 4974959, at *10 (Sup. Ct. N.Y. Cty. Oct. 3, 2014).  For the Court's convenience, PwC has included citations to both New York and South Carolina law in its analysis.

*Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  "This means the who, what, when, where, and how: the first paragraph of any newspaper story."  *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 520 (S.D.N.Y. 2014).

To establish that PwC knew or should have known of the falsity of its statements, Concentrix "must specifically plead facts that give rise to a strong inference that the defendants had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 542-43 (S.D.N.Y. 2007) (applying "strong inference" standard to dismiss negligent misrepresentation claim); *see also Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 514 (S.D.N.Y. 2018); *Fagan v. AmerisourceBergen, Corp.*, 356 F. Supp. 2d 198, 218 (E.D.N.Y. 2004) ("Plaintiff's claims for negligent misrepresentation and fraudulent concealment lack specifically pleaded events which give rise to a strong inference that the defendants had an intent to defraud, knowledge of falsity, or a reckless disregard of the truth, and are, therefore, dismissed." (citation, brackets, and internal quotation marks omitted)).  "Allegations that are conclusory or unsupported by factual assertions are insufficient."  *ATSI Commc'ns*, 493 F.3d at 99.

## C.  Concentrix Did Not Plead Any Misrepresentations "With Particularity"

Concentrix fails to identify any specific misstatement of material fact attributable to any specific individual from PwC, falling well short of Rule 9(b)'s "who, what, when, where, and how" pleading requirement.  Not once in the FAC's paragraphs referencing "PwC" or "Counterclaim Defendants," does Concentrix plead:  (i) the person(s) at PwC who made any alleged misrepresentations; (ii) where or when said person(s) made those misrepresentations; (iii) to whom said person(s) made those misrepresentations; or (iv) the medium used by said person(s) to make those misrepresentations, such as by e-mail, telephone, videoconference, or in person.  *See generally* FAC ¶¶ 3, 6, 8-15, 17-28, 49-51, 53, 59, 104, 196-226.  Concentrix's most

detailed allegations against PwC come in a laundry list of supposed misrepresentations, none of which include an identified speaker, recipient, date, location, or medium.  *See* FAC ¶ 20.[5]

Notably, Concentrix concedes that it does not know who at PwC allegedly "made the misrepresentations" because "the key employees involved in the communications with PwC are no longer employed by Concentrix and have not been reachable despite diligent and reasonable efforts."  FAC ¶ 21.  That admission suggests Concentrix dragged PwC into this litigation as a fishing expedition to validate its generalized claims, contrary to Rule 9(b).  *See Grey v. Gruntal & Co., Inc.*, 1984 WL 1344, at *4 (S.D.N.Y. Dec. 14, 1984) (dismissing complaint with prejudice where plaintiff "contend[ed] that much of the relevant information is wholly within defendants' knowledge, so that discovery would be necessary to put adequate flesh on the bare bones of the complaint").

This Court's decision in *U.S. Capital Partners, LLC v. Stanwich Capital Advisors, LLC*, 2015 WL 4388421 (S.D.N.Y. July 17, 2015) (KPF), is instructive.  In *U.S. Capital*, the defendant alleged that six representations by a corporate entity supported its fraud claim.  *Id.* at *4.  This Court, however, dismissed defendant's claim for failure to satisfy Rule 9(b)'s requirement that defendant identify the individual speaker of each of the alleged misstatements.  *Id.*  The Court further emphasized that the defendant had failed to explain *why* the alleged misstatements were false.  *Id.* at *5 ("Was it false that USC Partners was 'affiliated with' the Breakwater funds?  Or, even if they were 'affiliated,' was it false that they had 'access' to the Funds?").  This Court concluded that speculation about the falsity of alleged misstatements does not satisfy Rule 9(b)'s heightened standard for fraud-based claims.  *Id.* (citing *Shields v. Citytrust Bancorp, Inc.*, 25

---

[5] Concentrix identifies only one PwC employee in the FAC, who "in December 2016" allegedly "informed Concentrix that demos were not needed prior to signing the [MSA]."  FAC ¶ 26.  But that allegation does not include a recipient, specific date, location, or medium, and Concentrix does not classify that statement as a misrepresentation.

F.3d 1124, 1128 (2d Cir. 1994)).  This Court should apply the same well-reasoned analysis here and dismiss Concentrix's negligent misrepresentation claim.

Finally, even if Concentrix had adequately pleaded any of the alleged misstatements listed in paragraph 20 of the FAC, those statements still would not be actionable.  Statements of future expectations—such as that a program would be "a large effort," amenable to "existing functionality of [Concentrix's] GIAS system," or "a significant mod," or that "Concentrix would not have to deal with it," FAC ¶ 20—cannot form the basis of a negligent misrepresentation claim.  *See Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20-21 (2d Cir. 2000); *Koontz v. Thomas*, 511 S.E.2d 407, 413 (S.C. 1999) (prediction that services "could be completed in a reasonable time" and "fees for services rendered would not be excessive" not actionable).  Nor are general statements actionable, such as that Phoenix's products were "industry standard."  *See* FAC ¶ 51; *see also B&M Linen Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 482 (S.D.N.Y. 2010) (finding that promises of "top of the line" equipment with "topnotch output" are nonactionable statements).  Nor can PwC's alleged denial of Concentrix's requests for additional information during due diligence support a negligent misrepresentation claim.  *See* FAC ¶ 208; *see also Harsco Corp. v. Segui*, 91 F.3d 337, 347-48 (2d Cir. 1996) (holding denial of a request for additional documents prior to entering into a contract cannot support a negligent misrepresentation claim).

### D.    Concentrix Failed to Plead PwC's Culpable State of Mind

Concentrix does not come close to pleading facts giving rise to a "strong inference" that PwC knew or should have known of the falsity of its alleged statements to Concentrix.  *See Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990); *Henneberry*, 532 F. Supp. 2d at 542-43.  Such an inference cannot be based on "speculative," "conclusory," or "unsupported" claims, *id.*, but rather, "must be sufficiently particularized," *Rothman v. Gregor*, 220 F.3d 81, 93

(2d Cir. 2003).  Concentrix must therefore support its claim "either (a) by alleging facts to show that [PwC] had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Henneberry*, 532 F. Supp. 2d at 542.  Specifically, Concentrix must "allege that [PwC] benefitted in some concrete and personal way" from the misrepresentation.  *See, e.g.*, *Novak v. Kasaks*, 216 F.3d 300, 307-08 (2d Cir. 2000).

Concentrix claims that PwC "made statements of fact to Concentrix that Phoenix's products were largely standard and typical in the industry knowing that this was false" and "knowing that Phoenix's products were much more complex and unique than represented and that only a subset of Phoenix's products was being provided for Concentrix's analysis during the Due Diligence period."  FAC ¶¶ 18-19; *see also* FAC ¶¶ 200, 202, 207, 221.[6]  Those unsupported, conclusory assertions fail to support a strong inference that PwC knew or should have known of the falsity of its alleged statements to Concentrix.

Nor has Concentrix articulated why PwC—"the leading provider of professional services to the insurance industry," FAC ¶ 10, and a respected brand name—would mislead Concentrix during the vendor-selection process.  Concentrix does not allege that PwC had any reason to harm Concentrix or derived any benefit from making misrepresentations during due diligence.  Such an allegation would be nonsensical.  PwC had a reputational stake in the overall success of the project such that its only economic motive would be to ensure that the selection process was comprehensive and transparent.  *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 140-41 (2d Cir. 2001) ("Where plaintiff's view of the facts defies economic reason, it does not yield a reasonable

---

[6] Claims that "PwC knew or should have known that the flaws with the vendor selection process, limitations during the Due Diligence period and concealment of material facts were likely to mislead Concentrix," FAC ¶ 27; *see also* FAC ¶¶ 19, 198, 201, 204, 208, 218, 222, are not relevant to this element.  Concentrix must plead that PwC knew or

inference of fraudulent intent.") (internal quotations and citations omitted); *In re Sharp Int'l Corp.*, 281 B.R. 506, 516 (Bankr. E.D.N.Y. 2002) ("Courts have consistently found that allegations of ordinary economic motives are insufficient to plead a strong financial motive to aid the fraud, and are not a substitute for pleading actual knowledge . . . ."). Nor has Concentrix indicated what PwC stood to gain by the selection of Concentrix over the other potential vendors. The Court cannot find a "strong inference" that PwC knew or should have known of the falsity of its alleged statements to Concentrix without more concrete allegations. *See, e.g.*, *Trodale Holdings LLC v. Bristol Healthcare Investors L.P.*, 2018 WL 2980325, at *5-6 (S.D.N.Y. June 14, 2018) (KPF).

### E.   Concentrix Cannot Establish Justifiable Reliance on Any Statements PwC Made During Due Diligence

In order to state a claim for negligent misrepresentation, Concentrix must allege that it justifiably relied on PwC's alleged misrepresentations in entering the MSA. Concentrix cannot meet this requirement for two reasons: (i) courts hold sophisticated parties like Concentrix responsible for their informed decisions to enter a contract; and (ii) Concentrix expressly disclaimed reliance on the due diligence process in the MSA.

#### 1.   Concentrix Knowingly Entered the MSA Aware of the Risks Regarding Phoenix's Products

Reliance on extra-contractual representations is unreasonable for a sophisticated party entering into a complex commercial transaction. *See, e.g.*, *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003); *Cheney Bros., Inc. v. Batesville Casket Co.*, 47 F.3d 111, 114-15 (4th Cir. 1995). When a sophisticated party is on notice that information exists that would be material to its decision to enter into the contract, but that party

---

should have known of the falsity of the alleged representations, not just that PwC knew that Concentrix would be misled thereby. *See Anschutz*, 690 F.3d at 114.

nevertheless enters into the contract "without securing the available documentation or inserting appropriate language in the agreement for his protection, . . . the failure to insert such language into the contract—by itself—renders reliance on the misrepresentation unreasonable as a matter of law." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1543 (2d Cir. 1997) (quoting *Rodas v. Manitaras*, 552 N.Y.S.2d 618, 620 (1st Dep't 1990)).

The Second Circuit provided an instructive application of those rules in *Century Pacific, Inc. v. Hilton Hotels Corp.*, 354 F. App'x 496 (2d Cir. 2009) (summary order).[7]  That case involved agreements to develop Red Lion-branded hotels between defendants Hilton Hotels Corp., Doubletree Corp., and Red Lion Hotels, Inc., the owners of the hotels, and plaintiffs Century Pacific and Beeker Enterprises, two hotel operations companies.  *See Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 210 (S.D.N.Y. 2007).  While negotiating the agreements, the plaintiffs learned that defendant Hilton would retain the right to sell the Red Lion brand under the terms of the contracts.  *Century Pac.*, 354 F. App'x at 498.  When Century Pacific voiced concern about that possibility, the defendants orally represented that they had no present intention to sell the Red Lion brand.  *Id.*  Ultimately, Century Pacific entered into the agreement with the defendants without an express contractual provision memorializing the defendants' oral representation.  *Id.*  Hilton sold the Red Lion brand later that same year and the plaintiffs sued.  *Century Pac.*, 528 F. Supp. 2d at 212-13.

In affirming the district court's judgment in the defendants' favor, the Second Circuit noted that Century Pacific was:  (i) a "sophisticated party," (ii) represented by counsel in the contract negotiations, and (iii) aware that Hilton retained the right to sell the Red Lion brand

---

[7] While summary orders are not binding on district courts, the Second Circuit has noted that such decisions nevertheless "illustrate routine applications of established law."  *Sung Cho v. City of New York*, 910 F.3d 639, 646 n.7 (2d Cir. 2018).

under the terms of the agreement.  *Century Pac.*, 354 F. App'x at 498.  Century Pacific had even

been successful in negotiating some limits to that right before entering into the contract.  *Id.*  The

court explained that it is not reasonable for a sophisticated party to rely on extra-contractual

representations regarding a "known risk" when entering into an agreement without securing

contractual language to protect itself from that risk.  *Id.* at 498-99.[8]

Concentrix's own allegations demonstrate it could not justifiably rely on PwC's alleged

misrepresentations.  Concentrix is a sophisticated third-party administrator in the life insurance

and annuities industry.  *See* FAC ¶ 1.  Concentrix engaged in months of due diligence and

contract negotiations related to the project at issue.  *See* FAC ¶¶ 16, 37.  Concentrix entered into

the nearly 100-page MSA—with hundreds of additional pages of detailed schedules—with the

assistance of counsel.  *Cf.* MSA at CIS000078 (indicating Concentrix's counsel signed the

MSA).  Concentrix took on obligations worth millions of dollars in the MSA.  *See* FAC ¶¶ 106-

07.  Concentrix knew that it did not have an opportunity to test its systems on Phoenix's products

during due diligence.  *See* FAC ¶¶ 24-26.  Concentrix knew that it did not have time to review

the 50,000 pages of documents provided during due diligence.  *See* FAC ¶¶ 16, 25.  Concentrix

knew that Phoenix "did not know what their own policies involved."  FAC ¶ 33.  Given this

uncertainty around Phoenix's products, Concentrix negotiated provisions in the MSA to protect

itself, including "an initial six month period to analyze all the documents and Phoenix's product

---

[8] South Carolina law provides the same heightened standard for reliance.  For example, in *AMA Management Corp. v. Strasburger*, 420 S.E.2d 868 (S.C. Ct. App. 1992), the court affirmed a directed verdict against AMA's misrepresentation claim because AMA's reliance on TransAmerica's extra-contractual representation was not reasonable.  *Id.*  The court specifically noted that AMA was a "sophisticated commercial lender," "engaged in arm's length bargaining in which it was the initiating party," "act[ed] with professional legal advice," "understood that each party was seeking its own commercial advantage," "knew that each party was expected to exercise due diligence," and "knew that each party must make its own calculations of risk."  *Id.* at 875.  AMA could not, by accepting an oral representation rather than pushing for the due diligence it thought necessary, "create a liability by operation of law that TransAmerica would not undertake by contract."  *Id.*

requirements."  FAC ¶ 29.  Concentrix also "negotiated" and "insisted upon" including the word

"*draft*" in the MSA to describe the Transition Plan.  FAC ¶ 35; *see* MSA § 2.4(b).

Concentrix cannot now claim that it relied on any of PwC's purported representations

regarding Phoenix's products during due diligence.  The FAC illustrates that Concentrix knew

the risks attendant to entering into the MSA without insisting on additional time to review

documents and conduct due diligence.  Instead, Concentrix chose to forge ahead, negotiating for

protection from such risks and entering into the MSA before receiving the diligence it apparently

needed to assess the Phoenix project.  Concentrix could not justifiably rely on PwC's

representations under those circumstances.  *See, e.g.*, *Harsco*, 91 F.3d at 347 ("[I]t cannot be said

that denial of a request to see documents could constitute fraud, unless that denial suggested

falsely and deceitfully that those documents did not exist . . . ."); *Curran, Cooney, Penney, Inc. v.

Young & Koomans, Inc.*, 583 N.Y.S.2d 478, 479 (2d Dep't 1992) (finding no reasonable reliance

when plaintiff-purchaser had independent lawyers who negotiated six drafts of purchase

agreement during extended arm's-length negotiations and had access to seller's books and

records); *Compania Sud-Americana de Vapores v. IBJ Schroder Bank & Tr. Co.*, 785 F. Supp.

411, 419-20 (S.D.N.Y. 1992) ("[T]here is no basis to dispute that [plaintiff] had access to the

critical information underlying its fraud claim and, had it exercised ordinary intelligence or made

simple inquiries, [it] would have been able to discover the alleged misrepresentations.").

> ## 2. Concentrix Expressly Disclaimed Representations Related to Due Diligence

Concentrix's reliance on PwC's alleged extra-contractual statements is all the more

unreasonable in light of the MSA's provisions regarding due diligence.  Under New York law,

courts may determine "as a matter of law that a party's reliance [is] unreasonable where the

alleged misrepresentation is explicitly contradicted by the written agreement." *Robinson v.*

14

*Deutsche Bank Tr. Co. Ams.*, 572 F. Supp. 2d 319, 323 (S.D.N.Y. 2008); *see also Harsco*, 91 F.3d at 345-48 (finding no reasonable reliance where a contract contained a merger clause and seller disclaimed representations not written in the contract).  Although a generic merger clause alone may not be sufficient to disclaim reliance, when "the contract states that a contracting party disclaims the existence of or reliance upon specified representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations."  *Mfrs. Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993).  Concentrix made exactly such a disclaimer in Section 1.6 of the MSA, which, read in conjunction with the merger clause, bars Concentrix from satisfying the reliance element as a matter of law.

The MSA's merger clause contains a representation that the contract's terms contain Concentrix's "entire understanding" with respect to Phoenix's products and "supersedes all other prior or contemporaneous oral or written communications" regarding Concentrix's administration of Phoenix's insurance products.  MSA § 22.1.  And Concentrix further covenanted in Section 1.6 of the MSA that it had "carried out . . . to its satisfaction, adequate due diligence exercises and verification activities on [Phoenix]" and that it was "solely responsible . . . for due diligence conducted prior to" the MSA's execution.  This specific representation about Concentrix's sole responsibility for due diligence—the critical time period during which Concentrix alleges that PwC made misrepresentations—was plainly intended to insulate Phoenix and PwC in the event Concentrix had buyer's remorse.  Under Second Circuit precedent, Concentrix's specific disclaimer about the due-diligence period is yet another reason to bar its recovery for negligent misrepresentation.  *See, e.g.*, *Emergent Cap.*, 343 F.3d at 195 (sophisticated plaintiff's contractual representations related to its knowledge and experience sufficiently specific to disclaim reliance).

15

### F.     PwC Does Not Owe Concentrix a Cognizable Duty

Concentrix's negligent misrepresentation claim—and negligence claim, as discussed *infra*—also fails because Concentrix has not alleged a "special relationship" with PwC.[9] Concentrix, a self-proclaimed "leading Third Party Administrator in the U.S. Life & Annuity market," FAC ¶ 1, does not—and cannot—plausibly claim that PwC possessed some superior industry knowledge unknown to Concentrix upon which Concentrix relied in entering the MSA.

Concentrix can pursue a negligent misrepresentation claim only against a party who owed it fiduciary-like obligations.  *Anschutz*, 690 F.3d at 114; *Prime Mover Cap. Partners, L.P. v. Elixir Gaming Tech., Inc.*, 793 F. Supp. 2d 651, 674 (S.D.N.Y. 2011) (LAK) ("[U]nder New York law, a plaintiff may recover for negligent misrepresentation only where the defendant owes her a fiduciary duty." (quoting *Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992))); *see also AMA Mgmt. Corp. v. Strasburger*, 420 S.E.2d 868, 874 (S.C. Ct. App. 1992).  An arm's-length business relationship between sophisticated parties is not enough to support such an action.  *See, e.g.*, *J.P. Morgan Secs. Inc. v. Ader*, 9 N.Y.S.3d 181, 183 (1st Dep't 2015) (defendant's counterclaim allegations of plaintiff's superior knowledge of the hedge fund industry and past dealings with defendant was "not sufficient to establish a special relationship that would justify defendant's reliance on plaintiff's alleged misrepresentations"); *In re Lehman Bros. Secs. & ERISA Litig.*, 2013 WL 3989066, at *5-6 (S.D.N.Y. July 31, 2013); *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 644 S.E.2d 43, 50 (S.C. 2007).  PwC owes no such fiduciary obligations to Concentrix here.

---

[9] Whether PwC owes Concentrix a fiduciary-like duty is a question of law which the Court may properly determine on a motion to dismiss.  *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 27 (S.D.N.Y. 2009) (LAP).

PwC was not a party to the MSA and Concentrix does not allege the existence of a contract between Concentrix and PwC.  Nor did Concentrix allege a relationship with PwC that would impose duties approximating those contained in a contract.  As Concentrix admits, Phoenix engaged PwC solely in connection with the due diligence process, during which PwC facilitated the production of documents to Concentrix.  *See* FAC ¶ 11.  Recognizing that PwC's limited, arm's-length role precludes a fiduciary-like obligation, Concentrix suggests that PwC possessed specialized expertise in the insurance industry upon which Concentrix relied.  FAC ¶ 13.  Under Second Circuit law, however, Concentrix "cannot claim it relied on [PwC's] special expertise [where] it is clear that [Concentrix] itself had the relevant expertise at issue." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 789 (2d Cir. 2003).  "For this reason, New York courts generally do not permit negligent misrepresentation claims based on arm's-length transactions between sophisticated counterparties." *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 624 (S.D.N.Y. 2011).

Concentrix's allegation that PwC's knowledge of Phoenix's products created a special relationship fares no better.  "[K]nowledge of the particulars of a company's business—and of the true situation underlying the misrepresentations . . . does not constitute the type of 'specialized knowledge' that is required to impose a duty of care in the commercial context." *BNP Paribas*, 949 F. Supp. 2d at 511-12.  Finally, agents of a seller do *not* have a "general duty to verify the information" provided by the seller for the buyer.  *See, e.g.*, *Harrington v. Mikell*, 469 S.E.2d 627, 630 (S.C. Ct. App. 1996).  Concentrix offers only conclusory allegations that PwC knew the information that it was relaying from Phoenix to Concentrix was inaccurate.  Because Concentrix admits that it is a sophisticated third-party administrator highly knowledgeable in the insurance industry, PwC owed no fiduciary-like duty to Concentrix.

17

Accordingly, Concentrix's negligent misrepresentation claim fails.

## II. Concentrix's Negligence Claim is Duplicative and Not Properly Pled

Concentrix's negligence claim (Count VII) is nothing more than a duplication of its negligent misrepresentation claim (Count VI) under a different name.  To state a claim for negligence, Concentrix must allege that (i) PwC owed a duty of care to Concentrix, (ii) PwC breached that duty, and (iii) Concentrix was damaged as a proximate result of the breach.  *See, e.g.*, *Pasternack v. Lab. Corp. of Am. Hldgs.*, 27 N.Y.3d 817, 825 (2016); *Chakrabarti v. City of Orangeburg*, 743 S.E.2d 109, 112 (S.C. 2013).

Courts regularly dismiss a claim as duplicative when such a claim is premised on identical conduct and seeks the same relief as another claim.  *See, e.g.*, *Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 257 F. Supp. 3d 348, 359 (S.D.N.Y. 2017) (dismissing negligence claim premised on "failure to ascertain" truth of statement because negligent misrepresentation requires defendant knew or should have known of statement's falsity); *Quail Hill, LLC v. City of Richland*, 692 S.E.2d 499, 508 (S.C. 2010); *see also Aetna Cas.*, 404 F.3d at 568, 590 (dismissing negligence claim as "entirely duplicative" of negligent misrepresentation claim).  When comparing a negligence claim to a negligent misrepresentation claim, courts look at whether the "crux" of the negligence claim was "furnish[ing] erroneous information."  *Quail Hill*, 692 S.E.2d at 508 (treating negligence and negligent misrepresentation claims "as solely one for negligent misrepresentation").

There is no question that Concentrix's negligence claim is based on the same conduct Concentrix alleges to support its negligent misrepresentation claim:  providing information about Phoenix's products.  In its negligence claim, Concentrix alleges that "PwC had an obligation to understand the complexities of Phoenix's products and business requirements, and *owed a duty to accurately represent that information to the vendors* during the vendor selection process and

18

due diligence period." FAC ¶ 215 (emphasis added). Concentrix goes on to allege that "PwC was the primary source of information that the vendors, including Concentrix, relied upon," that PwC "owed a duty to use care in providing necessary information to the vendors," and that "PwC was negligent in failing to act prudently and in carelessly providing inaccurate and insufficient information to Concentrix." FAC ¶¶ 216, 217, 222. Concentrix also made nearly identical allegations of injury for its negligent misrepresentation and negligence claims. *Compare* FAC ¶ 212 *with* FAC ¶ 225. It is well settled that Concentrix cannot make the same claim twice under different headings. *See, e.g.*, *Kortright*, 257 F. Supp. 3d at 359; *Paladini v. Capossela, Cohen, LLC*, 2012 WL 3834655, at *5 (S.D.N.Y. Aug. 15, 2012) (LAP) (dismissing claims "predicated on the same allegations" and seeking identical relief), *aff'd*, 515 F. App'x 63 (2d Cir. 2013). Accordingly, the Court should dismiss Concentrix's negligence claim as duplicative of its negligent misrepresentation claim.

Finally, Concentrix's negligence claim is substantively deficient for the same reason as its negligent misrepresentation claim: the FAC fails to plead that PwC owed Concentrix a cognizable duty. *See Pasternack*, 2014 WL 4832299, at *14 (noting duty element of negligent misrepresentation and negligence claims are identical); *Midland Mortg. Corp. v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 780, 792 (D.S.C. 2013) (same). For the reasons set forth in Section I.F, *supra*, the Court should dismiss Concentrix's negligence claim for this fatal deficiency.

## III.   Concentrix's Claims are Time-Barred

Concentrix sat on its claims against PwC—alleging misrepresentations that occurred in the Summer of 2016—for more than three years until Phoenix sued Concentrix for breach of contract in early 2020. But Concentrix admits it knew all the relevant "facts" by mid-August 2016 and negotiated language in the MSA to protect itself by the end of 2016. Concentrix's

negligent misrepresentation and negligence claims are therefore time-barred under either New York's or South Carolina's three-year statute of limitations.  *See* N.Y. CPLR § 202.[10]

A federal court sitting in diversity applies the forum state's statute-of-limitations provisions, as well as any rules that govern the tolling of the statute of limitations.  *See Vincent v. Money Store*, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2013).  Federal courts sitting in New York apply New York's borrowing statute, CPLR Section 202, *see id.*, which provides that, for claims of a non-resident plaintiff like Concentrix, a court must apply the shorter statute-of-limitations period provided by either New York or the state where the cause of action accrued, *see* CPLR § 202; *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d. Cir. 2002).  Importantly, Section 202 "guards against forum shopping by out-of-state plaintiffs by mandating use of the shortest statute of limitations available."  *In re Coudert Bros. LLP*, 673 F.3d 180, 190 (2d Cir. 2012).

New York follows the traditional accrual methodology:  A cause of action accrues at the time and place of the injury.  *Cantor Fitzgerald*, 313 F.3d at 710.  If the claimed injury is "purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss."  *Id.* (quoting *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999)).  "Courts within the Second Circuit have consistently held that a business entity's residence is determined by its principal place of business."  *Petroholding Dominicana, Ltd. v. Gordon*, 2019 WL 2343658, at *6 (S.D.N.Y. June 3, 2019) (KPF) (quoting *Woori Bank v. Merrill Lynch*, 923 F. Supp. 2d 491, 494 (S.D.N.Y. 2013)).

Concentrix is a South Carolina corporation with its principal place of business in that state.  FAC ¶ 1.  Both New York and South Carolina apply a three-year statute of limitations for negligent misrepresentation and negligence claims.  *See* CPLR § 214(4); S.C. Code Ann. § 15-3-

---

[10] A defendant may raise a statute-of-limitations defense at the motion-to-dismiss stage where an action is barred from the face of the pleading.  *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

530(5); *U.S. Fire Ins. Co. v. N. Shore Risk Mgmt.*, 114 A.D.3d 408, 410 (1st Dep't 2014) ;

*Novita LLC v. 307 W. Restaurant Corp.*, 35 A.D.3d 234, 234 (1st Dep't 2006); *Weinreich v.*

*Toyota Motor Sales, U.S.A., Inc.*, 2019 WL 5684376, at *3 (D.S.C. Oct. 31, 2019).  The Court

should therefore apply a three-year limitations period for Concentrix's claims.

According to Concentrix, it conducted due diligence related to the MSA between June

12, 2016, and August 17, 2016, during which time it received 50,000 pages of documents for

review.  FAC ¶ 16.  Concentrix claims that, during due diligence, it did not have sufficient time

to review those documents, did not have an opportunity to test the compatibility of its systems

with Phoenix's products, and did not receive samples of Phoenix's products.  FAC ¶¶ 23-26.

Each of those alleged deficiencies with due diligence would have been obvious to Concentrix at

the time.  Concentrix also claims that unidentified PwC representatives stated during due

diligence that Phoenix's products were "standard and typical in the industry," FAC ¶ 18, that the

"complexities of Phoenix's products and business requirements could not have reasonably been

discovered or even possibly gleaned in the limited time to review tens of thousands of pages

documents [*sic*] during the Due Diligence period," and that those complexities were "only later

discovered by Concentrix after April 2017," FAC ¶ 210.  Notably, Concentrix also asserts that

the day after due diligence ended Phoenix's chief executive officer and chief investment officer

informed Concentrix that "Phoenix did not know what their own policies involved and they

needed the vendor who won the contract to get the details required, that Phoenix did not know

and could not provide, and to be flexible and deal with surprises accordingly."  FAC ¶ 33.

In fact, due to the uncertainties around Phoenix's products, Concentrix claims to have

negotiated language in the MSA indicating the implementation schedule was "a ***draft***" and

"emphasizing the importance of the analysis phase" during which Concentrix would "analyze

Phoenix's products, determine the requirements needed, and develop the modifications necessary to transition the services onto Concentrix's platform."  FAC ¶¶ 34-35 (emphasis in original); *see also* FAC ¶ 42.  Concentrix then entered into the MSA on December 23, 2016.  FAC ¶ 37.

Concentrix's conduct before executing the MSA demonstrates an acute awareness that it did not fully understand the complexities of Phoenix's products.  Concentrix's claims therefore accrued by the end of due diligence (August 17, 2016) or, at the very latest, when Concentrix signed the MSA (December 23, 2016).  But Concentrix waited until April 17, 2020 to file its original counterclaim against PwC—months after the three-year limitations period ended.  Accordingly, the Court should dismiss the FAC against PwC as time-barred.

## IV.    Concentrix Improperly Joined PwC in This Action

Concentrix asserts that its negligent misrepresentation and negligence claims against PwC "arise out of the same transaction, occurrence or series of transactions or occurrences" as its claims against Phoenix, and that "questions of law or fact common to both Phoenix and PwC arise will arise [*sic*] in the action."  FAC ¶ 6.  It further states that "PwC is a necessary and indispensable party in whose absence the court cannot accord complete relief among existing parties."  *Id.*  The plain terms of the FAC demonstrate that Concentrix's claims against PwC and Phoenix are entirely unrelated and do not support PwC's joinder in this litigation.

### A.    PwC Is Not a Necessary and Indispensable Party For Mandatory Joinder

Concentrix has no basis to join PwC as a necessary and indispensable party under Rule 19.  *Id.*  PwC has not "claim[ed] an interest relating to the subject of the action," and the Court could plainly afford complete relief in this action—on Phoenix's breach-of-contract claim and on Concentrix's counterclaims against Phoenix—in PwC's absence.  *See* Fed. R. Civ. P. 19(a)(1)(A-B).  Thus, Concentrix cannot drag PwC into this litigation through mandatory joinder.  *See, e.g.*,

*Corchado v. Product Design & Dev., Inc.*, 2000 WL 134689, at \*2 (S.D.N.Y. Feb. 4, 2000)

(rejecting Rule 19 joinder of a new defendant that was neither necessary, nor indispensable).

### B.   Permissive Joinder is Not Appropriate Because Concentrix's Claims Against PwC and Phoenix Lack Common Questions of Law or Fact

Rule 20(a) allows for permissive joinder where the claims against the existing party and

the party proposed to be joined arise out of the same transaction or occurrence and share a

common question of law or fact.  *See* Fed. R. Civ. P. 20(a); *German v. Fed. Home Loan Mortg.*

*Corp.*, 1998 WL 812478, at \*5 (S.D.N.Y. Nov. 16, 1998) (denying joinder of third party because

(i) there was little overlap in proof between existing parties and (ii) joining third party would

delay the resolution of the principal claim in the matter).  When a party does not satisfy the

conditions for permissive joinder, the Court may remove that party from the action under Rule

21.  *See Glendora v. Malone*, 917 F. Supp. 224, 227 (S.D.N.Y. 1996).  The Court has substantial

discretion in deciding whether to remove a party as misjoined.  *See id.*  In exercising that

discretion, courts look at the "probability that joinder of parties will delay the final disposition of

the action."  *Id.*; *see also* 7 Charles Alan Wright et al., Federal Practice and Procedure § 1652 (3d

ed. 2020) ("The purpose of [Rule 20(a)] is to promote trial convenience and expedite the final

determination of disputes . . . .").

Concentrix's respective claims against Phoenix and PwC rely on different factual issues.

For Concentrix's claims against Phoenix, alleging breach of contract, breach of the warranty of

good faith and fair dealing, negligent misrepresentation, negligence, and fraudulent inducement,

the fact-finder will have to determine, at least, (i) what representations Phoenix made about the

MSA implementation schedule, (ii) whether Concentrix was thereby induced to enter the MSA,

(iii) what representations Phoenix made about continuing the project with Concentrix, (iv)

whether Concentrix was thereby induced to expend additional resources on the project, (v)

Phoenix's intent when making those representations, (vi) the meaning of provisions of the MSA, and (vii) whether Phoenix breached the MSA.  By contrast, for the counts against PwC the critical issues are (i) what representations PwC made to Concentrix about Phoenix's products, (ii) whether Concentrix relied on those representations in developing its proposal to win the contract with Phoenix, (iii) PwC's intent when making those representations, and (iv) the nature of the relationship between PwC and Concentrix for the purpose of evaluating whether PwC owed a duty to Concentrix.  Because there is no overlap among the critical fact issues between the claims against Phoenix and the claims against PwC, joinder is inappropriate on that basis. *See German*, 1998 WL 812478, at *7 (S.D.N.Y. Nov. 16, 1998) (common questions of fact must be "actually material to both types of claims").

Nor do Concentrix's claims against Phoenix and PwC share a common question of law. Even though Concentrix has alleged negligent misrepresentation and negligence against both Phoenix and PwC—as well as contract and fraud claims exclusive to Phoenix—the legal questions at issue are very different.  For example, while Concentrix alleges that both Phoenix and PwC owed a duty of care to Concentrix, it may argue that Phoenix's duty is based in contract, *see, e.g.*, FAC ¶ 166, while PwC's alleged duty appears based on a special relationship theory, *see, e.g.*, FAC ¶ 15.  And whereas Concentrix's relationship with Phoenix is governed by the detailed and lengthy MSA, PwC and Concentrix are third parties with respect to one another.

The material differences described above will result in undue delay and expense. Discovery on Concentrix's claims against Phoenix will include inquiry regarding contract negotiations and implementation, none of which is relevant to PwC.  Discovery on Concentrix's claims against PwC will include inquiry regarding due diligence, none of which is relevant to

Phoenix.  In short, trial on Concentrix's claims will include two entirely separate and unrelated

topics.  For the sake of efficiency, the Court should dismiss PwC from this case as misjoined.

**V.     The Court Should Dismiss Concentrix's Claims With Prejudice**

The Court should dismiss Concentrix's claims without leave to re-plead.  Concentrix has

now filed two separate sets of allegations against PwC, both devoid of factual support and

particularity required under the Federal Rules.  Since Concentrix cannot re-plead facts in a way

that would state viable claims against PwC, any attempt to re-plead the FAC would be futile.

*See, e.g.*, *Keeney v. Kemper Nat'l Ins. Cos.*, 133 F.3d 907 (2d Cir. 1998) (table); *San Leandro*

*Emerg. Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 815 (2d Cir. 1996).

<b>CONCLUSION</b>

For the foregoing reasons, PwC respectfully requests that the Court dismiss the FAC

against PwC with prejudice.

Dated:  Stamford, Connecticut
         September 11, 2020

                              Respectfully submitted,

                              FINN DIXON & HERLING LLP

                              By:     /s/ Michael Q. English
                                      Michael Q. English
                                      Matthew B. Danzer
                                      menglish@fdh.com
                                      Six Landmark Square
                                      Stamford, Connecticut 06901
                                      Tel: (203) 325-5000

                                      *Attorneys for PricewaterhouseCoopers Advisory*
                                      *Services, LLC*

## **CERTIFICATION**

I hereby certify that on September 11, 2020, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF

system.

By: /s/ Michael Q. English
      Michael Q. English
      Finn Dixon & Herling LLP
      Six Landmark Square
      Stamford, CT 06901
      Tel: (203) 325-5000
      E-mail: menglish@fdh.com